## In re BALCO BUILDERS, Inc.

District Court, E. D. New York. November 16, 1927.

**1. Bankruptcy ⊙⇒378—Motion for return of money deposited for purpose of composition held premature, and relief sought unwarranted.**

Application for order directing clerk to turn over to person who had furnished it money deposited for purpose of composition *held* premature, and the relief sought unwarranted in view of facts.

**2. Bankruptcy ⊙⇒377—Composition cannot be withdrawn after acceptance and against protest of creditors.**

A composition cannot be withdrawn after due acceptance, and certainly not against protest of creditors.

**3. Bankruptcy ⊙⇒377—Creditor's acceptance of composition cannot be withdrawn.**

A creditor cannot withdraw his acceptance of a composition.

**4. Bankruptcy ⊙⇒384—Court determines whether composition shall be confirmed or not, and may reach decision contrary to referee's decision.**

The court decides whether or not a composition made in due form shall be confirmed, and may reach a decision adverse to that of referee.

In Bankruptcy. In the matter of the bankruptcy of the Balco Builders, Inc. On motion for order directing clerk to turn over to one Stegman money deposited for purpose of a composition. Motion denied.

Archibald Palmer, of New York City (Max L. Rosenstein, of New York City, of counsel), for the motion.

John Kochendorfer, of Richmond Hill, N. Y., receiver.

Murray Levine, of New York City, for creditors opposed.

INCH, District Judge. This is a motion for an order directing the clerk of this court to turn over to a man named Stegman the sum of $6,041.91 deposited with said clerk for the purpose of a composition, which had been offered by a bankrupt corporation to its creditors and accepted by them.

[1] On or about October 14, 1927, the same application was made to Judge Campbell, on notice only to the receiver in bankruptcy. On the return day no one appeared in opposition, and on October 17, 1927, the motion was denied by Judge Campbell, under authority of In re Harry Bryer (C. C. A.) 281 F. 812, 49 Am. Bankr. Rep. 32. The order entered thereon by Judge Campbell, on October 24, 1927, denied the motion "without prejudice to a renewal thereof, upon notice to all the creditors of the said bankrupt corporation and all other parties in interest in this proceeding."

It thus appears that what was then determined was simply that the matter was then in no shape to be decided, owing to the failure to notify creditors and others, and that in the absence of such notice the motion was denied. The case cited by Judge Campbell was authority for such notice to be given. Stegman has now renewed his motion upon notice to all the creditors and others, pursuant to this right granted him. The receiver appears and objects, on the ground that from the time of the offer the estate has been compelled to incur certain expenses for custodian fees, etc.

Certain creditors, by their counsel, also appear and object on the ground that the offer of composition could not be withdrawn over objections by creditors, citing the Bryer Case, supra, and the said decision of Judge Campbell; also on the ground that the composition has not yet been disapproved, referring to the various steps so far taken in the matter; also on the ground that the composition proceedings have caused serious change in the value of the assets of the bankrupt (real property), which the creditors claimed could otherwise have been rented, and thus a foreclosure delayed, etc., or prevented, and that therefore it would be inequitable to now grant the motion.

This motion is not a motion to "withdraw" (whatever that may mean), or to confirm or reject, a composition. Both the motion papers before Judge Campbell and those now before me are based merely on a petition by Stegman to be allowed to withdraw the money deposited for the purpose of the composition. To be sure, the attorney for the bankrupt files an affidavit, in which he states that, before the special commissioner, and also before Judge Moscowitz, in September, 1927, he stated that the composition had been "withdrawn." As to this he is supported by an affidavit by Balsom, who says he is president of the bankrupt corporation. There is no order presented indicating any such conclusion by the court or referee.

While not cited by counsel for Stegman, there is authority for the court permitting

the return of money deposited for a composition (In re Bryer [C. C. A.] 287 F. 123), but such permission was given in that case under entirely different circumstances. The composition here has not been shown to have failed, nor has any order directing the payment of the money been presented. With a composition pending, it would seem to me of doubtful value to rely upon an ex parte order making conditional the deposit, where such order or condition was not a part of the offer of the bankrupt, or known by the creditors at the time of their acceptance. In other words, it does not seem to me that, even if the money had been so deposited pursuant to an ex parte order, Stegman should have a legal string thus tied around the money, by which he could pull it out, causing the composition to fail, unless the string was shown to the creditors at the time of their acceptance, or the composition no longer legally existed.

The facts in the Bryer Case, supra, on the other hand, show a meritorious case. The special commissioner had recommended that the composition be refused. The receiver in bankruptcy had deposited the money, and as officer of the court had stated to the court that there was no possibility of the composition going through, as to which fact the court itself was likewise satisfied, and the money had been deposited under the special order of the court. If and when the composition here fails will be the time to consider Stegman's right to the money. His motion is therefore premature, and it does not seem unreasonable to say that, even should the money be then allowed to be withdrawn by Stegman, the reasonable expenses strictly caused the estate by the delay due to the bankrupt's offer and stay should be first ascertained as a condition for such withdrawal.

Counsel for Stegman further claims that the composition has been "withdrawn," and therefore has ceased to exist. I fail to find that this is so. There is no claim here of any fraud or misrepresentation.

[2] In the first place, under such circumstances a composition cannot be "withdrawn" after due acceptance, certainly not against the protest of such creditors. In re Agree (D. C.) 247 F. 590; In re Bryer (C. C. A.) 281 F. 812, 49 Am. Bankr. Rep. 32.

[3] Nor can a creditor "withdraw" his acceptance. In re Levy (D. C.) 110 F. 744; In re Jablow (C. C. A.) 15 F.(2d) 132. "This question must be answered in the light of the principle stated by the Supreme Judicial Court, that a 'composition partakes of the nature of a contract.'" Myers v. Interna-

tional Trust Co. (Feb. 21, 1927), 273 U. S. 380, 383, 47 S. Ct. 372, 374 (71 L. Ed. 692, 9 Am. Bankr. Rep. [N. S.] 306).

[4] The judge of the court decides whether the composition, once made in due form, shall be confirmed or not. In re Graham (C. C. A.) 252 F. 93. Even if the referee reports adversely, the judge may think otherwise, and so order. In re Crosby (D. C.) 275 F. 880.

I have not been presented with any order showing that the duly made offer of the bankrupt is no longer binding. On the contrary, from the papers it would appear that the bankrupt duly made an offer of composition to its creditors at a meeting thereof, the offer being 10 per cent., payable in cash immediately on the confirmation of the composition. This offer was duly accepted by the creditors, and the referee, on August 22, 1927, duly recommended that the composition be confirmed. The offer was all cash.

The money that the bankrupt arranged with Stegman to deposit was deposited with the clerk of this court, and thereupon an order was made, on August 30, 1927, returnable September 9, 1927, why this composition should not be confirmed. On the return day, various creditors, including those now objecting, appeared and objected to the composition; one of them filing specifications of objections, whereupon the bankrupt filed exceptions to such specifications of objections, and also an order was asked for directing an examination of the bankrupt. In other words, there took place the ordinary dispute on the return day of an offer to pay 10 per cent. on the dollar.

Nothing came of all this activity. The specifications of objections were apparently withdrawn, the motion for the examination was withdrawn, the exceptions of the bankrupt to the specifications were withdrawn, and the offer and acceptance unopposed remained as before. Counsel for the bankrupt states that these appearances and objections by creditors made it impossible to consummate the composition, in that Stegman had given the money to the bankrupt by an agreement between them, to be deposited only on condition that the composition be confirmed by a certain date in September, and that, inasmuch as the creditors caused the delay beyond that date, and the composition failed, he should receive his money back; but there is nothing here to show that the composition has failed.

There is nothing to indicate here that the creditors made any such bargain. On the

contrary, all that I am aware of, after a careful reading of the offer and acceptances, is that the bankrupt offered to pay 10 per cent. in cash, deposited the cash, asked the court to confirm it, and certain creditors objected, but withdrew their objections. The agreement of Stegman was not made a part of the offer.

I fail to see why a court should, under such circumstances, on the application of some friend of a bankrupt, render impossible the carrying out of a composition, which apparently is in shape to be carried out, solely on the ground of some private arrangements, not consented to by the creditors, made by the bankrupt with said friend, or possibly others.

The composition could not be made by Stegman for the bankrupt. Luxury Fruit Co. v. Harris (C. C. A.) 217 F. 740. It is the application by the bankrupt to be discharged of its debts by way of composition that is before the court, not whether Stegman made a good or bad bargain in advancing money to the bankrupt. In other words, the composition should be clearly decided one way or the other, in a direct manner, before this court should interfere with the fund deposited for that composition.

If an offer to compromise is made to depend on secret or private arrangements between the bankrupt and friends, not presented to and agreed upon by the creditors, so that, upon alleged failure of some conditions of the arrangement between bankrupt and such friends, and regardless of the plain offer to the creditors, the court shall render the composition impossible of completion, by withdrawal of the money in the manner here sought, then an offer of the bankrupt will rest on a most insecure foundation, and opportunities for delays otherwise unobtainable, with possibly serious loss to the creditors, will be present.

The creditors should see that this composition is completed and duly presented in the usual way to the court for its consideration. In the meantime, this motion is, as I have said, premature, and must be denied, with leave to renew at the proper time.

There is one thing more to be said. According to the papers submitted, Stegman entered into a written agreement with the bankrupt, by which he advanced to the bankrupt, for the purpose of paying the 10 per cent. cash to its creditors, the money necessary, and in return received duly executed deeds of the real estate owned by the bankrupt, with only the condition subsequent that such deeds should not be "recorded" unless the composition was confirmed, and that, if not confirmed on or before September 19, 1927, then the said Stegman should receive back his money. This agreement was not made with the creditors of the bankrupt, and nowhere does it appear that Stegman has returned the real property purchased or transferred, or even offers to do so. On such a record, to allow Stegman to take his money back would leave the bankrupt estate entirely in the hands of Stegman, as he presumably has the deeds and now wants the money. The real estate may be of little or no value, but this is something that is not before me. Furthermore, the title to this real estate, the sole asset of the estate, possibly has been complicated by this action of the bankrupt.

Motion denied.