## McKEEVER v. LOCAL FINANCE CO. et al.
### No. 7851.

Circuit Court of Appeals, Fifth Circuit.

Nov. 21, 1935.

William S. Pritchard, Archie T. Grubb, and Albert A. Rosenthal, all of Birmingham, Ala., for appellant.

Borden Burr, D. K. McKamy, and A. Berkowitz, all of Birmingham, Ala., for appellees.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal tests primarily whether a propertyless debtor, who has applied under section 74 of the Bankruptcy Act, as amended (see 11 U.S.C.A. § 202) for an extension, has obtained it upon the condition of pledging a portion of his future monthly earnings, and has thereafter incurred new debts, may take voluntary bankruptcy. It tests, too, whether such bankruptcy is as to both new and old creditors, what is its effect on the extension agreement, and whether the debtor may withdraw from and dismiss the debtor proceeding. Full conclusions of fact and law were filed below. This is what they show:

McKeever was, on December 8, 1933, a salaried man, without property and without debt-paying ability, except out of his earnings as railroad engineer, of $220 per month. On that date, being indebted in the amount of $1,620, largely to small money lenders, and all of the debts due, he filed under section 74 of the Bankruptcy Act, as amended, a debtor's petition for an extension. The extension proposal was made, accepted, and on December 26, confirmed under the practice prevailing in that district that the debtor would deposit monthly for application to his scheduled debts until they had all been paid in full, a part, in this case $50, of his future earnings. By March 30, 1935, the debtor, under his agreement to deposit $50 a month, had made substantial payments, to wit, nearly $600, on the debts scheduled in the extension proceeding. On that date, finding that he had accumulated more new debts, again to small money lenders, than he had paid old ones, and that his last state was worse than his first, being now in-

450

debted in the sum of $1,885.18, McKeever decided to abandon his extension proceeding and take the benefits of voluntary bankruptcy. On April 10 following, he filed, in the same court in which his debtor proceeding was pending, the usual voluntary verified petition in bankruptcy. All of ·those to whom he owed debts, those whom he had listed in the debtor proceeding and the additional creditors he had since acquired, were listed indifferently as his creditors. · The only asset he listed was accrued wages of . $89.19 due him by the Southern Railway Company and claimed by him as exempt. He was duly adjudged a bankrupt, and the cause was referred to Bondurant, one of the referees in bankruptcy, who ordered the scheduled wages to be paid into the bankruptcy court.

The Local Finance Company having lodged with the railroad company an assignment the bankrupt had given it of the wages he had scheduled as an asset, the referee on April 23, on motion of· the bankrupt, issued a rule nisi citing the finance company to show cause why the assignment should not be dismissed and held for naught. That company, appearing to the rule, filed a petition objecting to the jurisdiction of the bankruptcy court on the ground that the debtor's petition was pending undismissed in the same court, and that Nesbitt, another referee to whom it had been referred, had exclusive jurisdiction of the debtor and his property. Bondurant, upon the stipulation of the parties that on account of usurious interest paid, the bankrupt was not indebted to the finance company, dismissed its objection to the court's jurisdiction, ordered it to dismiss its assignment, and directed the railroad company to pay the wages in question into the court. The finance company brought a proceeding to review, and, when the matter came on for hearing before the District Judge, filed in addition to the pleadings it had filed below a petition to vacate and set aside the bankruptcy adjudication. Another creditor, listed as such in both schedules, alleging that the application to be adjudicated and the adjudication was a fraud on the court and the bankrupt's creditors, moved that the adjudication be set aside, the proceeding dismissed, and that Nesbitt, the special referee, be directed to proceed with the liquidation of the estate in the debtor proceeding. The bankrupt, on his part moving to strike the creditor's petitions to vacate the adjudication, asserted that the fact that the debtor extension proceeding had been filed and was still pending was no bar to a subsequent voluntary bankruptcy, especially as to debts since incurred. He pointed out that the adjudication was regular on its face, and insisted that no facts were shown to invalidate it. He urged that the extension agreement pledging payment from his future wages until his debts were paid did not purport to and could not bind him not to take bankruptcy, and, particularly, that neither the debtor proceeding nor that of bankruptcy subjected his future earnings to the jurisdiction of the court. He prayed in the alternative, that if the creditors' petitions were maintained, and his adjudication set aside, the bankruptcy proceeding and the debtor proceeding be consolidated, and that the bankrupt be allowed to dismiss his debtor proceeding and be adjudged a bankrupt. The District Judge denied the bankrupt's motion to strike the creditors' petitions. He vacated the adjudication in bankruptcy. Consolidating the bankruptcy with the debtor proceeding, he denied the bankrupt's motion to be allowed to dismiss his debtor petition and to be adjudicated a bankrupt. He found "that this Court in this consolidated proceeding has sole and exclusive jurisdiction over both the person and estate of the debtor in said debtor proceeding until the said debts be paid or said proceeding dismissed. And that it has jurisdiction over all wages earned by the bankrupt from the filing of the debtor proceedings to the entry of this decree and over all future subsequent wages until the debtor proceeding be finally disposed of," adjudging that the bankrupt was able out of his future earnings to pay into the debtor's court all claims against him,[1] and that the debtor proceeding and the extension agreement bound the bankrupt to continue depositing there from

[1] Finding of fact VI. "The Bankrupt out of future earnings has the ability to continue to carry forward the provisions and terms of the extension agreement, and has the further ability out of his future earnings to pay through the debtor's court all claims, accounts or debts incurred or acquired by him subsequent to the filing of his debtor's petition, and to pay same upon a parity with similar claims, accounts or debts previously made or incurred by him, when the amounts and character of said claims or debts have been allowed, fixed and determined by the debtor's court."

his future earnings until not only the original, but subsequent creditors were paid,[2] he directed all money paid or to be paid in the bankruptcy proceeding to be transferred to the debtor proceeding. Directing Nesbitt to continue that proceeding in the interest of all creditors, both old and new, he directed him to inquire into and examine the validity of all claims old and new, and make findings on them all.

Appellant urges here that these findings in effect pledge his future earnings indefinitely subject only to the court's discretion to terminate the pledge; that they mortgage his future to his past, operating to nullify at once the Alabama statute[3] prohibiting pledging future earnings, Littleton v. Littleton, 224 Ala. 103, 139 So. 335, the federal statute authorizing voluntary bankruptcy, section 4 Bankruptcy Act, as amended, title 11 U.S.C.A. § 22, and the general public policy underlying the Bankruptcy Act, Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195.

Appellees, pointing to the morality manifest in the order requiring the appellant to pay his just debts, insist that the legality of the order is equally manifest. They urge that both expressly and by implication sections 73 and 74 of the Bankruptcy Act, as amended (see 11 U.S.C.A. §§ 201, 202), make it plain that an extension agreement once made, must be carried through to the end, and may not be defeated by permitting the debtor, at his volition, to withdraw from it. They argue that the intent and the effect of these sections was to make an accepted and approved extension agreement a substitute for bankruptcy, and that to that extent they have entirely abridged and withdrawn the right of voluntary bankruptcy, and limited, as provided in them, the right to involuntary bankruptcy. They argue that an extension agreement duly accepted and confirmed is in effect a composition agreement; that a composition agreement duly accepted and

approved may not be withdrawn from [In re Levy (D.C.) 110 F. 744; In re Agree (D.C.) 247 F. 590; In re Bryer (C.C.A.) 281 F. 812; In re Balco Builders (D.C.) 22 F.(2d) 845], and an extension agreement may not be.

Appellant points out that not only does section 74 contain no direct repeal of the statute authorizing voluntary bankruptcy, but section 74 (m) in terms provides that the jurisdiction asserted is the same as if a voluntary petition had been filed. He points out too, that it is settled law that section 74 merely enlarges the scope of bankruptcy relief. Continental Illinois Nat. B. & T. Co. v. Chicago, R. I. & P. Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 605, 79 L.Ed. 1110. He insists that whatever may be the rights of the creditors in the extension agreement and whatever the effect of the adjudication as to them may be, there can be no question whatever that as to new creditors, not parties to that agreement, plaintiff may take bankruptcy, and equally no question that the filing of the debtor proceeding did not give the court jurisdiction as to new creditors not parties to the extension agreement, or as to future earnings. Section 70 Bankruptcy Act, title 11, U.S.C.A. § 110; Wheeling Structural Steel Co. v. Moss (C.C.A.) 62 F.(2d) 37; 11 U.S.C.A. § 103(a) (4); Zavelo v. Reeves, 227 U.S. 625, 33 S.Ct. 365, 57 L.Ed. 676; Seaboard Small Loan Corp. v. Ottinger (C.C.A.) 50 F.(2d) 856, 77 A.L.R. 956; Local Loan Co. v. Hunt, supra.

He insists further that he was entitled to take bankruptcy, not only as to new creditors, but as to the old ones as well; that nothing in the agreement obliged him to continue with it. It bound no property; it had no application except as to his future earnings, and that both the statutes of Alabama and the fundamental underlying principles of bankruptcy render nugatory and abortive any attempt he might have made to pledge to his creditors his

---

[2] Conclusion of law E. "The Court further concluding that it has exclusive jurisdiction over debts made by the said debtor subsequent to the filing of the said debtor's proceeding, as well as exclusive jurisdiction over all wages earned by the debtor and/or bankrupt from the date of the filing of his said debtor's proceeding, and also exclusive jurisdiction over all future subsequent wages hereafter earned until the termination of the debtor's extension, and has exclusive jurisdiction to hear and determine and fix the amounts of such debts whether incurred prior or subsequent to the filing of the debtor's petition."

[3] "Assignments void as to future wages. All assignments hereafter made by any person of salaries or wages, to be earned in the future, shall be absolutely void. The provisions of this section shall also apply to orders given by employees covering the whole or part of future wages." Section 9232, Code of Alabama, 1923.

future earning power. He argues that the construction of section 74 insisted on and given effect below would result in that section being, instead of as it was designed to be, a provision in aid of debtors, a millstone around their necks. It would result, he argues, instead of being a further measure of relief from a state of debtorship, one for the more firm riveting of its chains. He argues finally that it would be a remarkable conclusion to arrive at, that a bankruptcy statute for the relief of debtors could be made, as to small propertyless debtors, the means of placing them permanently in bonds.

We agree with appellant. We think it clear that nothing in the debtor extension proceeding, nor in the statute under which it was taken, has in any way abridged or impaired appellant's right to take voluntary bankruptcy. We think each order complained of was wrongly entered. Appellant was duly and properly adjudged a bankrupt, as he had a right to be. It was error to vacate that adjudication. It was error to consolidate the bankruptcy proceeding with the debtor proceeding for the purpose of administering the debtor's future earnings to pay debts old and new. The order should have been to cease and desist from administering the debtor proceeding and to administer all matters in bankruptcy.

Whether if in the debtor proceeding there were property to be administered the rights of old creditors would be superior to the new as to that property, it is not necessary for us to determine, for there is no property. Future earnings are not, in contemplation of the bankruptcy law, property. Neither may they be converted into property under it by an arrangement of the kind here. The extension agreement was merely a device or plan by which, so long as the debtor was willing to carry it out, a part of his salary could be made available for the discharge of his debts. It was not a binding pledge of his future earnings. It could not be, because of the Alabama statute prohibiting such a pledge. It could not be further, because an arrangement entered into binding a debtor's future earnings, beyond the time of his willingness to have them applied, is contrary to the spirit and the letter of the bankruptcy law. Such an arrangement does not promote, it defeats, the purposes for which section 74 and the other bankruptcy statutes were enacted.

The orders appealed from are reversed, and the cause is remanded, with directions to reinstate the adjudication in bankruptcy, and to take further proceeding in accordance herewith.