In the Matter of Harvey L. JACKSON, Debtor.

No. RI–BK–67–69.

United States District Court
S. D. Illinois, N. D.
Oct. 18, 1968.

Frank Galvin, Jr., Rock Island, Ill., for the debtor.

Hubbard Neighbour, Moline, Ill., for International Harvester Co.

## DECISION AND ORDER ON CERTIFICATE OF REVIEW

ROBERT D. MORGAN, District Judge.

This matter is before the Court on a Certificate of Review of an order entered by the Referee in Bankruptcy on June 27, 1968, permanently enjoining International Harvester Company, Farmall Works, from terminating the Debtor's employment because of a wage deduction order entered by the Referee on January 24, 1968, under Chapter XIII of the Bankruptcy Act, 11 U.S.C. §§ 1001–1086.

The relevant, undisputed facts are as follows. Harvey L. Jackson (herein Debtor), an employee of Farmall Works of International Harvester (herein International), filed a petition for relief under Chapter XIII of the Bankruptcy Act. Included in his debts was one to the Farmall Employees Credit Union (herein Credit Union) for $3,400, secured by a 1966 automobile.

Debtor is married and supports one child. His take-home pay at International was $105 a week at the time of the first meeting of creditors. The Wage Earner Plan provided for payments of $216 per month, with secured debts to be paid first, and contained a provision allocating a minimum of $100 per month to the Credit Union.

On April 14, 1967, the Referee entered an order confirming the Plan and appointing a trustee who was to disburse the funds to the creditors according to the Plan. Sixteen creditors, with total obligations of $8,469.89, filed claims. Included in the claims was one by the Credit Union, which accepted the Plan, for the amount of $3,624.10. Thereafter, the Credit Union filed a reclamation petition for the automobile. On July 28, 1967, the Referee entered an order allowing the reclamation petition and ordered that the car be reclaimed in full payment of the debt.

Debtor failed to make regular payments to the trustee; and on January 24, 1968, at the request of the trustee, the Referee entered an order requiring International to deduct $30 each week from the wages of Debtor and to pay the same to the trustee. International complied with the order, but thereafter notified Debtor that his employment would be suspended, and eventually terminated, unless the wage deduction order was released under the terms of a provision concerning demands against wages in International's collective bargaining agreement, which provision has been in the contract since 1955.

On February 12, 1968, Debtor filed a petition with the Referee requesting that International be enjoined from suspending or terminating his employment. On that day the Referee temporarily enjoined International from terminating or suspending Debtor by reason of the wage deduction order.

International moved to dissolve the injunction, and, at two sessions, held on February 20, and May 14, 1968, the Referee conducted a hearing to determine

whether the injunction should be dissolved or made permanent. Evidence was heard and the matter was thoroughly briefed and argued before the Referee. International admitted the authority of the Referee to order it to make the deduction from wages but denies the authority to enjoin it from terminating or suspending the employment of Debtor solely because of such order. It is acknowledged that no other cause has been assigned for such suspension as was threatened.

By agreement with the Credit Union, upon request of an employee in writing, International does make deductions from an employee's wages or salary and disburse it to the Credit Union; and at the time of the hearing almost 3200 employees were having weekly deductions made for the Credit Union, either for member savings or loan repayments. The Company also makes many deductions, upon request of the employee, to purchase U. S. Bonds, as well as tax deductions required by law. Total employment at the Farmall Works is about 3650.

On June 27, 1968, the Referee permanently enjoined International from terminating the employment of Debtor because of the wage deduction order. Petition for Review was filed with the Referee by International on July 2, 1968. The Certificate was filed in this Court on July 26, 1968. Oral arguments were heard by this Court on September 11, 1968, and International filed an additional written brief and argument at that time.

■ The ultimate and only real question here is: Does the Referee have legal authority under these circumstances to enjoin International from terminating the Debtor's employment because of the wage deduction order? The Court concludes that he does.

This authority is believed to exist quite clearly under Section 658 and Section 2(a) (15) of the Bankruptcy Act (11 U.S.C. §§ 1058 and 11(a) (15)).

Section 658 of the Act provides with respect to Wage Earner Plans:

"During the period of extension, the court—

"(1) shall retain jurisdiction of the debtor and his property for all purposes of the plan and its consummation and shall have supervision and control of any agreement or assignment, provided for in the plan, in respect to any future earnings or wages of the debtor; and

"(2) may issue such orders as may be requisite to effectuate the provisions of the plan, including orders directed to any employer of the debtor. An order directed to such employer may be enforced in the manner provided for the enforcement of judgments."

Section 2(a), on jurisdiction of courts of bankruptcy, provides in pertinent part as follows:

"(a) The courts of the United States hereinbefore defined as courts of bankruptcy * * * are hereby invested * * * with such jurisdiction at law and in equity * * * to—

* * * * * *

"(15) Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act; provided, however, that an injunction to restrain a court may be issued by the judge only."

This section is specifically applicable to Chapter XIII cases (Wage Earner Plans) under 11 U.S.C. § 1002. As defined in the Act, the word "Court" includes the Referee (11 U.S.C. § 1(9)).

It would seem that the statute needs little amplification or explanation. By specific language or necessary implication, the Referee is authorized to issue injunctive process against anyone but a court in order to enforce the provisions of the Act. It is here conceded that the wage deduction order to an employer is proper to effectuate a wage earner plan. May such order then be rendered a complete nullity by an employer discharging

the debtor from employment for no reason except that he suffered the wage deduction order to be issued? This Court does not believe so.

International argues strongly that this is a matter of utmost importance to it from a standpoint of precedent. It is stated, and not disputed, that International employs over 90,000 people in 21 plants at various locations and has frequent involvement with Wage Earner Plans under the Bankruptcy Act. It is stated that never before has a Referee in Bankruptcy undertaken to enjoin it from exercising its right, bargained many years ago with the union representing its employees, to suspend and ultimately discharge any employee who does not obtain release as provided in the contract of any outside "demand against wages." International points out that an injunction such as here involved, if sustained, will permit and perhaps require the bankruptcy court to examine into the stated cause or causes of any future suspension or discharge of the Debtor to determine if the injunction has been violated.

That this is a case of first impression is true, so far as this Court is able to determine. That, of course, simply makes the correct decision more important, and perhaps more difficult. Likewise, the Court's obligation to see that any injunction is not violated, or that violation be dealt with, is hardly sound argument against its issuance. It should be observed that the injunction here does not undertake to prohibit suspension or discharge for any cause except the wage deduction order, and if other reason of any substance does exist at any time for suspension or discharge, such action would not violate the injunction. Such determination by the Court should not be in any sense a determination of whether "cause" for discharge existed under the terms of the collective bargaining agreement, and the procedures contained in that agreement should govern that determination, if the employer's action were to be otherwise reviewed.

International contends, and this Court agrees: (1) that the collective bargaining agreement makes no exception of wage deduction orders under Chapter XIII of the Bankruptcy Act; (2) that any reasonable construction of the term "demand against wages of an employee" in that agreement embraces such orders within its meaning; and (3) that International has in no sense voluntarily waived this bargained provision by not applying it to certain wage deductions requested by its employees. This Court believes that such contract provision has all the force it can have legally, but that it is not enforceable against a proper wage deduction order of a Referee in Bankruptcy.

In its very scholarly arguments, both oral and written, and its thorough briefs filed with the Referee and with this Court, International makes two major contentions which, boiled down, seem to be: (1) Under the Labor Management Relations Act (29 U.S.C. § 141ff), and Supreme Court cases interpreting and applying that Act, the grievance procedure under a collective bargaining agreement is the exclusive course open to an employee covered thereby who is suspended or discharged, or threatened with either, and hence Debtor had no right to ask for the injunction here; and (2) The Referee has no power to issue the injunction here because it is not really "necessary" for the enforcement of the Plan, in view of an alternative order against the employee debtor himself. These points will be discussed in that order.

I

EXCLUSIVE CONTRACT GRIEVANCE PROCEDURE

■ The Court sees no conflict here with the cited provisions of the Labor Management Relations Act, which encourage the practice of collective bargaining (29 U.S.C. § 151), the settlement of disputes by bargaining between employers and representatives of their employees (29 U.S.C. § 171(a)), or the declared desirability of settlement of dis-

putes arising over the application or interpretation of collective bargaining agreements by the method agreed upon (29 U.S.C.A. § 173(d)). Likewise, the cases which are said to hold in substance that the contract grievance procedure is the exclusive remedy of an aggrieved employee covered by a union contract; that he does not have the option of a suit on the contract; and even that, if arbitration is provided, as here, that the arbitrator's decision is final. See: Local 174 Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593; Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580, and United Steelworkers v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

The Labor Management Act and the principles involved in the *Lucas, Maddox* and *Enterprise Wheel* cases simply do not involve the situation here and are not in conflict with the principles of law applicable here. The cited cases and statute control ordinary disputes between employer and employee where there is a collective bargaining agreement, as here, but they do not involve, or purport to control the administration of, proceedings under the Bankruptcy Act.

But for this proceeding, it may be conceded that Debtor could not sue in court for contract violation over his discharge. Here, however, this proceeding is properly existing in the Bankruptcy Court. Debtor's action here is not a suit for contract violation, or an effort to substitute this court for the arbitrator under the contract. No question of contract interpretation or application is really before this Court. Debtor's action here is in the nature of a report to the Bankruptcy Court that the Wage Earner Plan under administration, and the wage deduction order, are in jeopardy because the employer is invoking a contract provision, clearly within its discretion not to invoke, which will deprive him of the employment which provides the funds for the Plan. This injunction does protect Debtor's employment against this single

cause for discharge, and thwarts this single application of the subject contract provision, but that is purely incidental to the purpose of the injunction. The injunction is needed, because of International's purely voluntary action, to protect the income which effectuates the public policy of the Bankruptcy Act providing for Wage Earner Plans and wage deduction orders. Congress has decided that this is in the interest of the creditors and trade and commerce generally. It will tend to see debts paid rather than to be discharged unpaid in ordinary bankruptcy, and it may help to bring order to the financial lives of debtor wage earners.

The union contract (collective bargaining agreement) argument, while adroit, appears, upon careful scrutiny, to be truly a red herring. By this contract provision, authorizing, but not requiring, eventual discharge of employees who suffer "demands against wages" for which they do not obtain release, International really has nothing more nor less of substance related to this point than an employer who has no union contract at all. Such an employer can also decide whether to discharge or to retain an employee who suffers the usual type of demands against his wages, which always represent a degree of extra work and resulting expense for the employer. In that case, however, this contract argument would be wholly unavailable and the concededly valid wage deduction order would be effective. Surely nothing in the Labor Management Relations Act, or any decision of court in relation thereto, means that by collective bargaining agreement an employer can create for himself the authority to decide whether a valid wage deduction order of a court of bankruptcy shall be effective or not.

It is not a question of whether the policy of the Labor Management Relations Act shall prevail over that of the Bankruptcy Act. There is no real conflict. The Labor Management Relations Act does not undertake to regulate bankruptcy proceedings.

## II

### NECESSITY OF THE INJUNCTION

 This, likewise, is an artful argument. International relies on United States v. Krakover, 377 F.2d 104 (CA 10 1967), in which the Court held a wage deduction order of a referee invalid as against the United States, because "Congress has not waived immunity of the United States to suit" (at 106). In so holding, that court stated by way of *obiter dicta* that its decision did not deprive federal employees of the benefit of Chapter XIII of the Bankruptcy Act because the Referee could still order the Debtor to endorse and turn over his paychecks. The Court said: "Such an order will protect the trustee and the creditor and will not infringe on the immunity of the United States" (at 107). International's argument is not that it has the immunity of the sovereign, but that, since this possibility of an alternative order against the Debtor exists, the injunction against it is not "necessary for the enforcement of the provisions of this Act," as specified in the general grant of jurisdiction to Courts of Bankruptcy (11 U.S.C. § 11(a) (15)).

When looked square in the face, however, this argument likewise has no real merit. It says, in effect: "While Referees do have authority to issue wage deduction orders to employers to effectuate Wage Earner Plans, if an employer decides to discharge such employee because of such order, then the Referee must withdraw the order to prevent the discharge and issue a new order against the employee to require endorsement of his paycheck." It seems abundantly clear that, in providing for wage deduction orders, Congress recognized the superiority thereof over orders against employees (as it did in requiring Federal income tax withholding); and that Congress did not intend to grant to employers in any event the right to choose between compliance with such order and discharge of the employee solely because of it. The order against the Debtor, to endorse his paycheck, is certainly next best, where sovereign immunity precludes the wage deduction order; but this is far from saying that a wage deduction order is unnecessary, or that enjoining termination of employment of the Debtor solely because of it is "unnecessary," in cases where such order is available and has been issued, simply because less effective alternative exists.

The Supreme Court in Continental Illinois Nat. Bank & Trust Co. of Chicago v. Rock Island & P. R. R., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935) has recognized the authority of the Referee to protect its proceedings by injunction. The Court said 294 U.S. at page 675, 55 S.Ct. at page 606:

> "By Section 2 of the Bankruptcy Act (U.S.C. Title 11, § 11), courts of bankruptcy are invested 'with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings.' They are essentially courts of equity, and their proceedings inherently proceedings in equity, * * *. The power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is, therefore, inherent in a court of bankruptcy, as it is in a duly established court of equity."

Although the case was quite different, the Supreme Court has thus spoken clearly on the nature of the Courts of Bankruptcy and their equitable power to protect their administration of cases. In the present case, it is apparent that the injunction is both necessary and reasonable to protect the plan against wholly arbitrary action by the employer. It should not be overlooked that a successful Wage Earner Plan will also tend to protect the employer in any case against wage demands from perhaps numerous creditors with whom it would have to deal, at least in the first instance, even with the collective bargaining agreement here found.

### CONCLUSION

A termination of Debtor's employment here would result in frustration of the objectives of Chapter XIII in this case.

Continued compliance with the order will work no important hardship on International, in view of the many such deductions it voluntarily handles weekly upon employee request. Loss of employment would almost certainly force Debtor into ordinary bankruptcy. Chapter XIII places a duty on the employer to assist in this manner in the rehabilitation of the Debtor, if the Referee so orders and the Debtor is otherwise worthy of continued employment, for the benefit of his creditors as well as the Debtor himself. This declared public policy should be carried out in the absence of unreasonable burden on the employer in so doing.

Accordingly, the order of the Referee in Bankruptcy, entered June 27, 1968, is in all respects sustained.

It is so ordered.