**In the Matter of Edward SPARKS, Debtor.**

**No. X59687.**

United States District Court
N. D. Alabama, S. D.

Nov. 26, 1969.

A. F. Lindbergh, Birmingham, Ala., for the debtor, Edward Sparks.

Manuel Levine, Birmingham, Ala., for the trustee.

Mark Taliaferro, Birmingham, Ala., for petitioner Pittsburgh-Des Moines.

## ORDER ON REFEREE'S CERTIFICATE OF REVIEW

ALLGOOD, District Judge.

This case is before the Court for decision on a certificate of Review of an order entered by the Referee in Bankruptcy on April 11, 1969, permanently enjoining Pittsburgh-Des Moines Steel Company (hereinafter referred to as Pittsburgh-Des Moines) from certain conduct, Pittsburgh-Des Moines having filed its petition for review of that restraining order.

The facts are as follows:

The debtor, Edward Sparks, filed his petition under Chapter XIII of the Bankruptcy Act on December 12, 1968. After the initial meeting of creditors, a wage earner plan of extension of time for the payment of the petitioner's debts was duly confirmed by the Referee in Bankruptcy on January 10, 1969. This plan called for the debtor to pay $25.00 per week to the Trustee appointed in the case, the proceeds of these payments to be distributed to the debtor's creditors in accordance with the provisions of the plan. The debtor commenced his payments thereafter but did not pay the full amount required by his plan. On March 21, 1969, the Referee entered an order directed to Pittsburgh-Des Moines, the debtor's employer, ordering that company to remit to the Trustee all wages due the debtor thereafter and to continue so to do until further orders of the Court. Upon receipt of this order, Pittsburgh-Des Moines notified the debtor that, unless he obtained from the Court a cancelation of the court order requiring it to remit the debtor's wages to the Trustee, he would be discharged from its employ. Thereafter, there being no order cancelling the order for debtor's wages, the Trustee, on March 25, 1969, filed his petition asking that Pittsburgh-Des Moines be temporarily restrained from discharging or threatening to discharge the debtor from his employment for or on account of the issuance of the Referee's order of March 21, 1969, pertaining to the remittance of debtor's wages to the Trustee and that the petition be set for hearing and, upon hearing, that the injunction be made permanent to the same effect. On March 25, 1969, the Referee entered a temporary restraining order, as prayed for by the Trustee, and set the matter for hearing. After a continuance, at the request of Pittsburgh-Des Moines, the petition of the Trustee was heard and evidence offered by the Trustee and by Pittsburgh-Des Moines and certain stipulations made. The Referee, on April 11, 1969, made and entered his Findings of Fact, Conclusions of Law, and entered a permanent injunction that Pittsburgh-Des Moines be " * * * permanently enjoined from terminating or threatening to terminate the employment of the debtor, Edward Sparks, because of the order of this Court of March 21, 1969, which requires said Respondent, Pittsburgh-Des Moines Steel Company, to remit the wages of the said debtor to the Trustee herein". One of the stipulations made by the parties was that Pittsburgh-Des Moines had a rule, as a part of its contract with the labor union in its place of business, as follows: "27. Wage Assignment or Debtors Court. Employees will be given opportunity to have assignment dismissed, and if not dismissed, employee will be discharged."

The Referee, in his statement of facts, sets forth the reasons for the issuance of an injunction, concluding that the exercise of such injunctive jurisdiction "is requisite to effectuate the provisions of the plan in this case."

There are several statutory provisions relevant to this review. Among them are:

Section 658 of the Bankruptcy Act:

"During the period of extension, the court—

"(1) shall retain jurisdiction of the debtor and his property for all purposes of the plan and its consummation and shall have supervision and control of any agreement or assignment, provided for in the plan, in respect to any future earnings or wages of the debtor;

and

"(2) may issue such orders as may be requisite to effectuate the provisions of the plan, including orders directed to any employer of the debtor. An order directed to such employer may be enforced in the manner provided for the enforcement of judgments."

Section 2a(15) of the Bankruptcy Act vests the courts of bankruptcy with "jurisdiction at law and in equity", to

"(15) Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act: *Provided, however,* That an injunction to restrain a court may be issued by the judge only;"

Pittsburgh-Des Moines cites further the provision of Title 29 of United States Code Annotated, Sections 101–115.

The petition for review raises several issues, which the Court will discuss first; thereafter, the Court will consider, in a more affirmative way, the propriety of the injunctive order here on review.

■■■ Pittsburgh-Des Moines disputes the statutory authority of the Referee in Bankruptcy to issue the kind of injunction here questioned. The first contention made with respect to this is that the Trustee in a Chapter XIII proceeding does not have the necessary status to qualify him as the petitioner for this injunction. Chapter XIII expressly provides that the Trustee "shall receive and distribute monies as provided by the plan." [Section 633(4)] Inasmuch as the purpose of the proceeding here in question is to enable the Trustee to "receive" the monies with which to carry out the plan, it is difficult to see how the statute could be more express in its provision that this was a duty of the Trustee. Given the duty, it is a corollary that he has the status to carry out his duty. The Trustee in Chapter XIII has the same powers and duties, within the scope of the plan involved, as does a Trustee in a straight bankruptcy proceeding. (Section 636).

■■ The emphasis by the reviewant in its petition for review upon Section 658 of the Bankruptcy Act, which provides that during the period of extension, the Court may issue such orders as may be requisite to effectuate the provisions of the plan, is directed to the specific provision that "an order directed to such employer may be enforced in the manner provided for enforcement of judgments." Petitioner fails to emphasize that the statutory provision quoted provides only that it *"may"* be so enforced. To further underline the fact that the Court "may" is expressive in this instance of only an optional or alternative manner of enforcement, is the provision above quoted from Section 2a (15) of the Bankruptcy Act, which expressly states that, in making its orders, it "may * * * make such orders * * * *in addition to those specifically provided for,* as may be necessary for the enforcement of the provision of this Act." This broad authority, under Section 2a(15), expressly invests the Referee with jurisdiction in equity, and for the enforcement of the provisions of the entire Act inclusive of Chapter XIII thereof. Section 602, of Chapter XIII of the Bankruptcy Act, further expressly provides that the provisions of Chapters 1–7 inclusive of the act apply under Chapter XIII.

■■ The petitioner for review claims in its brief at one point that the Court,

presumably the Referee, has been exercising its power under the provision quoted above to enjoin "in wholesale fashion." The record does not disclose this to be the case. The point is also made by reviewant that injunction should be an extraordinary remedy and used only sparingly and, with this statement of the petition for review, we agree and find that its use in this case does not indicate a "wild" or loose application of the statutory equitable authority. Perhaps this sparing use of injunction by Referees in this District, and other Districts, also accounts for another complaint made by the reviewant that there is not a wealth of case law with reference to such injunctions. The case of In re Jackson, 290 F.Supp. 872 (D.C.Ill., 1968), does support the conclusion reached by the Referee and the injunction issued by him, although there are naturally some factual differences in the case, which we find not to be such as to differentiate the basic legal conclusions reached.

Pittsburgh-Des Moines objects to the issuance of the injunction, contending that the same is barred by the provisions of the Norris-LaGuardia Act, 29 U.S.C.A. Sections 101–115. This well-known statute limits the authority of the Federal Courts to issue injunctions in labor disputes. There are cited a number of cases relating to injunctions in labor disputes affected by the Norris-LaGuardia Act. While the *Jackson* case, cited above, does not specifically deal with the Norris-LaGuardia Act, it does discuss the relationship between collective bargaining agreements and their provisions and the statutes relating thereto, on one hand, and bankruptcy proceedings, on the other. We agree with the conclusion in the *Jackson* case and feel that it applies with equal efficacy to the injunction limiting provisions of the Norris-LaGuardia Act:

> "It is not a question of whether the policy of the Labor Management Relations Act shall prevail over that of the Bankruptcy Act. There is no real conflict. The Labor Management Relations Act does not undertake to regulate bankruptcy proceedings."

In brief, we are satisfied that it was never intended that the provisions of the Norris-LaGuardia Act were to supersede or delimit the statutes and jurisdiction relating to bankruptcy proceedings. It might be noted that the provision for bankruptcy jurisdiction and legislation is directly contained in the Constitution of the United States and is not derivative or dependent upon some other, more general power such as the commerce clause. It is commonplace to note that the Bankruptcy Act, and exercise of the jurisdiction thereunder, delimit provisions contained in other statutes, both Federal and State, and in some instances even abridge the rights otherwise protected by the Constitution of the United States. The most obvious example is the authority of a Bankruptcy Court to give an effective discharge in bankruptcy against a contractual obligation which otherwise is sacrosanct by the guarantees of our Constitution. In this case, despite the extensive arguments to that effect, this Court is of the opinion that the Norris-LaGuardia Act simply does not reach to the extent of delimiting the injunctive powers expressly prescribed in the Bankruptcy Act.

Here again, the propriety of the Trustee as the party praying for an injunction in this case can be most clearly seen. Pittsburgh-Des Moines' contention that a labor dispute is involved might be argued more strongly if the debtor, himself, were the party praying for an injunction against his discharge. The Trustee is not, in this matter, acting primarily in behalf of the debtor, but is acting primarily on behalf of the creditors to whom the disbursement of monies is to be made. The injunction against the discharge of the debtor, solely because the Court has issued an order that his wages be remitted to the Trustee, is clearly not part of a dispute between the debtor and his employer, or a matter of labor relations, but is an order in aid of the administration of a bankruptcy case, at this juncture in that

case for the benefit of other than the debtor. This also demonstrates the validity of the conclusion that the Norris-LaGuardia Act's anti-injunction provisions, intended for application to labor disputes or labor relations, is not relevant to these proceedings.

Pittsburgh-Des Moines raises the issue that, since the debtor could make the payments required under the wage earner plan in the present case, it is not necessary, to enforce the wage earner plan, to enjoin his employer to remit the wages to the Trustee. This conclusion is based upon the case of United States v. Krakover, 377 F.2d 104. (C.A. 10, 1967), which held a wage deduction order of a Referee was invalid against the United States because of the sovereign immunity of the United States to suit. The case contained a dictum that this would not deprive Federal employees of the benefit of Chapter XIII because the debtor could still be ordered to turn his wages over to the Trustee. Aside from the fact that the latter statement is a dictum from the case, it does not seem to support the conclusion that the Court has no authority to issue an injunction to the employer. If the fact that the debtor could be ordered to pay his wages to the Trustee were a reason for not issuing an injunctive order to an employer, there would be no need for the express provision of the statute authorizing orders to be made directed to the employer. Since the statute does expressly authorize orders directed to the employer, the statute obviously recognizes and authorizes reliance upon other than the debtor for enforcement of the wage earner plan.

■ Finally, the petition for review alleges that the Referee has failed to comply with the provisions of Rule 65(d) of the Federal Rules of Civil Procedure in issuing this injunction. The Court is of the opinion that the Referee's order is ample in supplying the reasons for the issuance of the injunction complained of, that it is specific in its terms, and adequately describes the acts sought to be restrained thereby.

■ The specific complaints of the petition for review having been considered, the Court should also view this case from a more positive aspect. Injunctive proceedings should, as we have noted, be sparingly employed and only when important purposes require this form of relief. The question, then, is whether this Court should approve the injunction here issued as an appropriate form of order to be utilized in the enforcement of Chapter XIII wage earner plans.

Chapter XIII wage earner plans are multi-party proceedings, involving rights and correlative responsibilities of each of several parties: debtors, creditors, employers and trustees. In a background of the usual financially distressed condition of petitioning wage earners, it may well be that the rights and responsibilities are such that none of the parties would prefer that the rights had to be exercised or the responsibilities met. But the intent of Chapter XIII, pursuant to the constitutional authority of Congress in bankruptcy, is to provide a remedy for bad financial situations. The fact that parties, other than the debtor, are given statutory responsibilities is only typical and a necessary part of all bankruptcy legislation. Creditors usually are not overjoyed to be involved in any kind of proceeding under the Bankruptcy Act; but such is always the latent potential of engaging in any credit transaction. Similarly, employers may prefer not to be involved with any aspect of their employees' personal business affairs. But, in somewhat the same way that the employer becomes involved by statute in the employees' tax-paying obligations, Chapter XIII of the Bankruptcy Act expressly involves the employer in his employees' debt-paying obligations.

This involvement of the employer in a Chapter XIII proceeding is one of the vital provisions of the statute, and is essential to its success. It is only the liklihood of payment of the monies due under a Chapter XIII wage earner plan that makes such a plan feasible and acceptable

to creditors. Under the now superseded Section 74 of the Bankruptcy Act, the power of the Court over future wages of a wage earner plan petitioner was held to be lacking. McKeever v. Local Finance Co., 80 F.2d 449 (C.A. 5, 1935). This lack, from the universal experience of Referees administering such cases, would have spelled the death knell of wage earner extension plans. The cardinal, new provision of Chapter XIII in the Chandler Act in 1938 was the express provision for jurisdiction over wages of the petitioning debtor for the purpose of effectuating a confirmed plan. These future wages become the foundation of wage earner extension plans; from them come a necessary, reinforced, assurance of payment of debtors' money to meet the payment to the creditors under the plans. The wages, in Chapter XII plans, are the estate, as general property might be in a straight bankruptcy or in a business extension plan. Conservation and marshaling of those wages, then, is a critical factor in administration of Chapter XIII plans. The statute recognizes this by its terms, and expressly authorizes orders directed not only to debtors but to debtors' employers. The statute recognizes the frailty of dependence upon distressed debtors alone, and places some burden upon their employers.

The threatened defeat or impairment of this jurisdiction over wages, not merely in the debtor's hands, but in his employer's as well, therefore, calls forth the power of the Court to issue an injunction preventing such a result.

The present case is one particularly calling for the exercise of this jurisdiction. Pittsburgh-Des Moines' Get-Release-Or-Get-Fired Rule, by its terms, is designed as a mechanism to avoid compliance with a Chapter XIII wage order. The rule, in effect, says to the Bankruptcy Court: "We have an employee in your Court who we are willing to continue to employ, but, if you issue an order to us to send his wages to you, we will then, unless you cancel such order, discharge him. Either cancel your order, or we shall, by discharging the debtor, negate your order."

It can hardly be argued, as a realistic matter, that an injunction to prevent the exercise of such nugatory conduct is not an order (as expressly authorized by the statute) "requisite to effectuate the provisions of the plan" of a debtor who has already failed himself to remit sufficient of his wages to effectuate the provisions of the plan.

We conclude that the order of the Referee here complained of was proper, and the petition for review is hereby ordered dismissed and denied, and the case remanded to the Referee for continued administration of the case.