In re Roderick Keith TERRY, Cynthia Diane Terry, Debtors.

Cynthia Diane TERRY, Plaintiff,

v.

GORDON'S JEWELRY COMPANY OF VIRGINIA, INC., Defendant.

Bankruptcy No. 80–02342.

United States Bankruptcy Court, E. D. Virginia.

Dec. 30, 1980.

Richard W. Hudgins, of Hudgins & Neal, Newport News, Va., attorney for the debtor.

Stephen H. Pitler, of Joseph Smith, Ltd., Hampton, Va., attorney for Gordon's Jewelry Co. of Virginia, Inc.

## MEMORANDUM OPINION

HAL J. BONNEY, Jr., Bankruptcy Judge.

Cynthia Diane Terry [hereinafter "the debtor"] filed her Chapter 13 bankruptcy petition on July 21, 1980, and an order for relief was entered by operation of law. At the time the debtor obtained such relief, she was employed by Gordon's Jewelry Company of Virginia, Inc. [hereinafter "the employer"] as an assistant manager at one of its Hampton, Virginia, stores.

At the time of filing her bankruptcy petition she was indebted to her employer for certain jewelry she had purchased and payments were routinely deducted from her wages. Additionally, as a part of her duly executed employment agreement, it was stipulated and agreed that upon termination of employment any balance on the account "may be deducted from my final salary payment."

1. We have heard discussed, academically, around the coffee table the question of whether an employee of the bankruptcy court should be

The debtor's Chapter 13 plan provided for payments to her employer–creditor outside of the plan as a secured creditor; nevertheless, the debtor's employment was terminated on August 15th and wages accrued were credited to her account.

The debtor brings suit seeking:

1–restoration of her employment,

2–payment of back wages,

3–imposition of the sanctions of section 40.1–29, Code of Virginia as amended.

4–imposition of the sanctions of 11 U.S.C. § 362, and

5–damages for the alleged wrongs of the employer.

We go immediately to the root issue, the termination of the employment. The courts of bankruptcy generally take a dim view of an employer firing an employee simply because he or she has filed a bankruptcy petition and the jurisdiction to enjoin this is widely accepted. *In re Sparks*, 306 F.Supp. 676 (N.D.Ala.1969); *In re Jackson*, 424 F.2d 1220 (7th Cir. 1970); *In re Crutcher*, No. 33,802 (E.D. of Tenn.1971). See *Matter of Harvey L. Jackson*, 290 F.Supp. 872 (S.D.Ill. 1968); *Continental Bank v. Chicago Rock Island & Pacific Railway Co.*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); Consumer Credit Protection Act of 1968, Public Law 90–321, § 303(a) and (b).

But this is not a blanket rule [1] and certainly an employee can be dismissed for cause independent of an employer's chagrin at receiving a bankruptcy notice on one of its employees. *Associated Press v. National Labor Relations Board*, 301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953 (1937); *Coppage v. Kansas*, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441 (1915).

The debtor here was indeed dismissed for cause. The fact that the bankruptcy of which the employer had notice may indeed have triggered the firing is not overriding and should not be used to fore-

discharged for filing bankruptcy. May we never face this issue.

stall a discharge that was otherwise due. She was discharged, justifiably, for (1) poor sales, (2) use of the employer's time for personal matters and (3) laziness.

A study of the sales record in evidence for May to August clearly demonstrates that her sales were considerably poorer than the sales of others even those less experienced than she. There were numerous occasions when superiors spoke to her in "talk to sessions" about personal telephone calls on the job. For instance, Allen R. Riberby, the store manager, testified he had observed calls to her from relatives, calls lasting fifteen minutes "quite a number of times," and she had admitted the problem of personal calls in a July 1980 "talk to session." As assistant manager, hers was the duty to open the store in the morning by 9:30, yet almost routinely it was fifteen to twenty minutes late opening because she was in Don's eating. Her excuse that all of the other employees did the same thing and then rushed to work tardy does not justify her actions. Truly, a good example would have been helpful, but at the *very least* she owed it to her employer to open the store on time.

The dismissal was entirely justified.

It was in her favor that her employer had grounds for dismissal but had not previously exercised them. It would be unjust to say, in effect, "Now, she cannot be fired during the three year pendency of the Chapter 13 plan."

The dismissal was just and neither restoration of employment or damages are justified.

IT IS SO ORDERED.

The issue of wages seized is another matter. This case was filed on July 21st and notice of the bankruptcy was mailed by the Court to creditors on August 7th. Indeed, as concluded above, the employer had a knowledge of the Chapter 13 bankruptcy on August 15th when the debtor was discharged. This fact is clearly supported by all of the evidence, particularly the testimony of Charles Marshall, Gordon's Jewelry's Zone Manager.

The debtor's ledger card reflects that on September 17th, more than a month after dismissal, the sum of $342.57 was credited to her account. This, of course was wages due in the ordinary course of paying employees on August 16th. An additional $170 was due for the debtor's final week of employment. Strangely, two checks, $342.57 and $170.00, respectively, were tendered to the debtor's counsel by defendant's counsel minutes prior to trial of this case.

The debtor argues the applicability of the Code of Virginia, section 40.1–29, to this case. The purpose of such legislation is clear: employees shall be paid their wages promptly by their employers. But this section affords the debtor no solace, for it permits, in subsection (c), by written authorization, the withholding of sums in addition to taxes. In the employment contract she had consented to, upon termination, a credit of wages against her credit account.

Does not a creditor possess the right to mutual setoff in bankruptcy? Yes, this right is definitely retained in the Code at 11 U.S.C. 553, but the section is qualified by sections 362 and 363, section 362 being the automatic stay armament of the Code. It is 362 which provides "one of the fundamental debtor protections provided by the bankruptcy laws," as the legislative history terms it. It puts a STOP on all creditors efforts, including the right of setoff. 11 U.S.C. 362(a)(7).

■ But you must understand that the automatic stay *does not defeat* the right of setoff; it simply stays it pending "an orderly examination of the debtors' and creditors' rights." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 340–342, U.S. Code Cong. & Admin.News, 1978, pp. 5787, 6298; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 49–51, U.S.Code Cong. & Admin.News, 1978, pp. 5787, 5837.

■ Did the employer–creditor here run the STOP sign? It was certainly not a moving violation to hold the funds. It might be called a technical violation to have credited them on September 17th to her account; however, there has been no hesi-

tancy on the part of the employer–creditor to faithfully perform what the Court orders and, it has, indeed, paid the wages voluntarily. The Court finds no violation of section 362 meriting sanctions.

 The employer–creditor has the right to setoff the wages against the debt, but the saving measure for the debtor here is having claimed $300 in wages exempt and a waiver of such exemptions may not be enforced. 11 U.S.C. 522(e).

The debtor is entitled to the $300 claimed exempt and withheld at eight percent [8%] interest from August 15, 1980 until paid. The balance would be a proper setoff.

In all other respects, the Court finds for the defendant.

IT IS SO ORDERED.